1
2
3                          UNITED STATES DISTRICT COURT
4                       WESTERN DISTRICT OF WASHINGTON
                                   AT SEATTLE
5
6   GOETZ and SONS WESTERN MEAT LLC,              Case No. C07-00986MJP
7
8                    Plaintiffs,
                                                  ORDER GRANTING MOTION
9         v.                                      TO DISMISS
10  UNITED STATES OF AMERICA,
11                   Defendant.
12
13        This matter comes before the Court on Defendant's motion to dismiss.[1]  (Dkt. No. 15.)
14  After reviewing the moving papers, Plaintiff's response (Dkt. No. 23), Defendant's reply (Dkt.
15  No. 27), and all papers submitted in support thereof, the Court GRANTS Defendant's motion.
    The Court's reasoning is set forth below.
16
                                      **Background**
17
18        Plaintiff Goetz and Sons Western Meat L.L.C. ("Goetz"), owned by James D. Horton,
19  produces and distributes meat products in Washington.  (Am. Compl. ¶¶ 1.1, 2.1.)  For most of
20  2005, Danese Smith was the United States Department of Agriculture ("USDA") inspector for
    Goetz.  (Am. Compl. ¶ 3.1.)  Between January 1, 2005 and April 10, 2005, Ms. Smith issued
21
    three non-compliance reports ("NRs") on Goetz, and three more between July 10, 2005 and
22
    September 22, 2005.  (Am. Compl. ¶¶ 3.2-3.3.)
23
24        During an inspection on September 20, 2005, Ms. Smith noted uncovered meat and the
25  presence of flies.  (Am. Compl. ¶ 3.4.)  When she returned to the plant the next day, she was

26        [1] A Joint Stipulation filed on January 24, 2008, indicates that Defendant's Motion to Dismiss should be
    considered against the Amended Complaint.
27

ORDER — 1

1  unable to enter the premises through the garage door, and she became "animated" and accused

2  nearby employees of "hiding things."  (Am. Compl. ¶ 3.5.)  Mr. Horton complained about Ms.

3  Smith's conduct to her direct supervisor, Dr. Gregory Sherman, who asked that Mr. Horton

4  prepare a written complaint.  (Am. Compl. ¶ 3.6.)

5          On September 28, 2005, Ms. Smith tested a two-pound sample of natural juice ham for

6  the bacteria Listeria monocytogenesis; the test came back positive.  (Am. Compl. ¶ 3.7.)  Plaintiff

7  alleges that Ms. Smith did not gather the sample in accord with USDA procedure, which requires

8  that samples be taken from "commercial production run[s]."  (Am. Compl. ¶ 3.7.)

9          On November 1, 2005, Ms. Smith was notified that the Goetz plant experienced a

10  "heating deviation" while preparing beef strips and honey-cured hams.  (Am. Compl. ¶ 3.8.)  On

11  November 22, 2005, the USDA asked Goetz if it had taken measures against Staphylococcal

12  aureus enterotoxin after the heating deviation.  (Am. Compl. ¶ 3.10.)  Goetz had re-cooked the

13  affected beef strips and ham but had not tested for the pathogen, and placed a hold on the affected

14  meat after the USDA's inquiry.  (Am. Compl. ¶¶ 3.8, 3.10.)  On November 23, 2005, the USDA

15  suspended operation of Goetz's "Ready-to-Eat" ("RTE") program until proper testing for the

16  pathogen could be completed.  (Am. Compl. ¶ 3.10.)  The tests were conducted by a Puget Sound

17  agent and indicated a 95% statistical confidence that the pathogen was not present.  (Am. Compl.

18  ¶¶ 3.10-3.11.)  A report was presented indicating the 95% confidence level to Dr. James Adams,

19  co-manager of the Denver District Office of the USDA, who required additional testing.  (Am.

20  Compl. ¶¶ 3.11, 3.17.)  Plaintiff alleges that 70% is the "normal" confidence level required for

21  this pathogen and that the heightened requirement and additional testing was not mandated by

22  regulations.  (Am. Compl. ¶ 3.11.)

23          On December 1, 2005, the USDA reinstated Goetz's RTE program.  (Am. Compl. ¶

24  3.13.)  When Ms. Smith later inspected the hold items on December 16, 2005, she noticed that

25  almost 50 pounds of beef strips were missing.  (Am. Compl. ¶ 3.14.)  Plaintiff alleges that the hold

26  tags were accidentally removed on November 31, 2005 and the meat was sold.  (Am. Compl. ¶

27

ORDER — 2

1    3.14.)  The USDA then ordered Goetz to suspend all operations, including products with no

2    known problems.  (Am. Compl. ¶ 3.14.)  On December 29, 2005, the USDA allowed Goetz to

3    resume operations for "raw and pass-through products."  (Am. Compl. ¶ 3.16.)

4         Plaintiff alleges that Ms. Smith generated an "extremely aberrational" number of NRs

5    against it - 39 NRs between September 27, 2005 and December 31, 2005.  (Am. Compl. ¶ 3.17.)

6    Plaintiff's amended Complaint states five causes of actions against the United States: 1) negligent

7    supervision of an employee of the USDA; 2) negligent supervision of Plaintiff's business

8    operation; 3) malicious prosecution by the USDA employee; 4) intentional trespass; and 5) breach

9    of a regulatory duty.  (Am. Compl. ¶¶ 4.1-8.5.)

10        The United States moves to the dismiss on the ground that the Court lacks subject matter

11   jurisdiction under Fed. R. Civ. P.12(b)(1) and for failure to state a claim upon which relief can be

12   granted under Fed. R. Civ. P.12(b)(6).

13                                      **Discussion**

14        Defendant brings a facial attack and asserts that the allegations in the Complaint are

15   "insufficient on their face to invoke federal jurisdiction."  <u>Safe Air for Everyone v. Meyer</u>, 373

16   F.3d 1035, 1039 (9th Cir. 2004).  In considering this motion, the Court may not look to material

17   outside the Complaint.  <u>See</u> <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000).[2]

18        **I. Federal Tort Claim Act**

19        The federal government and its agencies are immune from suit unless it consents to waive

20   that immunity.  <u>Hercules, Inc. v. United States</u>, 516 U.S. 417, 422 (1996).  The FTCA provides a

21   limited waiver of sovereign immunity for:

22        injury or loss of property... caused by the negligent wrongful act or omission
          of any employee of the Government while acting within the scope of his office
23        or employment, under circumstances where the United States, if a private
          person, would be liable to the claimant in accordance with the law of the place
24        where the act or omission occurred.

25

26        [2] The Court need not address Defendant's Motion to Strike the declaration of Mr. Horton and facts asserted
     in Plaintiff's response because the merits of the motion to dismiss are based only on the content of the Amended
27   Complaint.

ORDER — 3

1   28 U.S.C. § 1346(b)(1).  However, the discretionary function exception provides that FTCA

2   jurisdiction cannot be based on "the exercise or performance or the failure to exercise or

3   perform a discretionary function or duty on the part of a federal agency or an employee of the

4   Government whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (emphasis

5   added).

6        Although the government has the burden to prove the discretionary function applies,

7   Plaintiff can invoke jurisdiction "only if the complaint is facially outside the exceptions of §

8   2680." Prescott v. United States, 973 F.2d 696, 701 (9th Cir. 1992).  The government must

9   show that (1) a statute, regulation, or policy contains an element of discretion; and (2) the

10  disputed conduct was based on considerations of public policy.  Berkovitz v. United States, 486

11  U.S. 531, 536-37 (1988).  There is a "strong presumption" that discretionary acts are based on

12  an underlying policy decision.  United States v. Gaubert, 499 U.S.315, 324 (1991).

13       **II**. **Plaintiff's Claims**

14       The discretionary function exception precludes subject matter jurisdiction over Plaintiff's

15  claims because all of the alleged actions of Defendant were discretionary and presumed to serve

16  underlying policy purposes.  Plaintiff does not allege that Defendant violated any statute,

17  regulation, or policy with the force of law in taking the ham sample, in issuing the NRs, in

18  requiring the "higher than normal" statistical confidence level for testing for Staphylococcal

19  aureus enterotoxin, or in shutting down Goetz's business operations.  See Starrett v. United

20  States, 847 F.2d 539, 541 (9th Cir. 1988) (plaintiff must plead the specific mandatory regulation

21  that government violated to overcome discretionary function exception).  USDA inspectors and

22  their supervisors have broad discretion in their decisions to test a company's compliance with

23  safety standards.  See 9 C.F.R § 417.8(g) (listing "sample collection" as one of eight methods

24  FSIS may use to verify business' Hazard Analysis and Control Plan ("HAACP")).  Additionally,

25  Plaintiff fails to cite any mandatory provision that requires a FSIS inspector to only test from a

26  "commercial production run."  Likewise, 9 C.F.R. § 417 governs the USDA's general response

27

ORDER — 4

1   to potential contamination of a product but leaves the substance of that review to the discretion

2   of the inspector.  See In re Supreme Beef Processors, Inc. 468 F.3d 248, 252 (5th Cir. 2006)

3   (USDA's implementation of food safety standard immune because involved "discretionary

4   acts").   Finally, 9 C.F.R. § 500.3 gives Defendant the discretionary authority to suspend or

5   withhold products without prior notice if any of eight grounds are found.

6          Likewise, the management decisions of Ms. Smith's supervisors are discretionary.

7   Plaintiff fails to allege that Ms. Smith's supervisors were prescribed or mandated by statute,

8   regulation, or any other policy that had the effect of law to take a particular action.  See

9   GATX/Airlog Co. v. Evergreen Intern. Airlines, 81 F.Supp.2d 1003, 1009 (9th Cir. 1999)

10  (negligent supervision claim dismissed because it failed to "allege any federal statute, regulation

11  or policy that would have required [employee's supervisors] to take particular action"); see also

12  Nurse v. United States, 226 F.3d 996, 1001 (9th Cir. 2000) (ruling that claims of negligent

13  supervision "fall squarely within the discretionary function exception.").  Instead, Defendant's

14  supervisory authority over its FSIS agents is broad and discretionary.  See United States v. S.A.

15  Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 816-20 (Secretary of Transportation

16  given broad discretion to enforce minimum safety standards, and in enforcing such standards,

17  "[the agency] is exercising discretionary regulatory authority of the most basic kind").

18         Although Plaintiff contends that further discovery will uncover internal policies

19  governing the protocol for an inspector's actions, (Pl. Resp. at 12), internal policies do not have

20  the effect of law and could not transform Plaintiff's claims into claims properly asserting subject

21  matter jurisdiction.  See United States v. One 1985 Mercedes, 917 F.2d 415, 423-24 (9th Cir.

22  1990) (unpublished and interpretive internal policies do not have force of law).

23         Additionally, Plaintiff fails to overcome the strong presumption that the actions of

24  Defendant were based on policy considerations.  The USDA is given broad authority to

25  establish compliance requirements from private business owners.  Those who inspect and those

26  who supervise inspectors have to balance limited governmental resources in deciding whom,

27

ORDER — 5

when, and how often to inspect, how much scrutiny to apply, and how to best serve the underlying goal of public safety. Decisions involving resource allocation and distribution from governmental agencies are "the type of administrative judgment that the discretionary function was designed to immunize from suit." Fang v. United States, 140 F.3d 1238, 1241 (9th Cir. 1998). This process requires a malleable system of oversight, consistent assessment of public and industry risk, and must afford inspectors the freedom to make objective decisions. Absent a specific regulation or policy with the effect of law requiring Defendant to act in a contrary manner, the above actions are presumed to be grounded in policy considerations. See Gaubert, 499 U.S. 328-29 (immunity applied because statutes gave government agency discretion to take a variety of actions to enforce regulatory requirements).

In some instances, clearly wrongful actions of government agents may render the discretionary function exception inapplicable. Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996) (exception did not apply when there could be no policy rationale for threatening family members of dead officers). Plaintiff argues that because Ms. Smith had a retaliatory intent in testing the ham sample and in issuing the 39 NRs, (Pl. Resp. at 13), and because Dr. Adams might have been acting with malice when he made his 95% statistical confidence level requirement, (Pl. Resp. at 15), Defendant's actions are not protected by the discretionary function exception. However, Plaintiff's argument fails because it has not alleged that any of Defendant's actions was groundless. Instead, the facts in the Complaint provide reasonable grounds for an inspector to issue NRs, to require a higher statistical confidence level for the presence of a pathogen, and to shut down business operations: exposed meat, the presence of flies, a positive test for Listeria monocytogenesis, almost 50 pounds of possibly tainted meat placed on hold and then accidentally sold to the public, and Goetz' failure to test for Staphylococcal aureus enterotoxin after a heating deviation. (Am. Compl. ¶ ¶ 3.4-3.12.) Several of these events are expressly made grounds for suspension. See 9 C.F.R. § 500.3(a).

Additionally, even if the actions of Ms. Smith or Dr. Adams were motivated by a

1  retaliatory intent, both the language in 28 U.S.C. § 2680(a) and case law indicates that if the

2  discretionary actions were negligent, wrongful, or an abuse of discretion, the government may

3  still be protected by the discretionary function exception if the action is susceptible to policy

4  analysis.  Miller v. United States, 163 F.3d 591, 593 (9th Cir. 1998) (disputed conduct need not

5  actually be grounded in policy considerations).  It is the nature of the action and not the

6  subjective intent of the government agent that is the subject of inquiry.  See Gaubert, 499 U.S.

7  at 325.  Because all of the actions alleged by Plaintiff were both discretionary and presumed to

8  serve a legitimate policy purpose, this Court lacks subject matter jurisdiction to hear Plaintiff's

9  claims.

**Conclusion**

11  Because Plaintiff has failed to assert subject matter jurisdiction under the FTCA, the

12  Court GRANTS Defendant's motion.  All claims are dismissed without prejudice

13  The Clerk is directed to send a copy of this order to all counsel of record.

14  Dated:   February 17, 2008.

15  /s/ Marsha J. Pechman

16  Marsha J. Pechman

17  District Court Judge

ORDER — 7